IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

WILLIE BERNARD BUTLER,      )
                                     )
          Petitioner,       )
                                     )
        v.             )     CV 113-016
                                     )
DENNIS BROWN, Warden,[1]     )
                                     )
          Respondent.    )

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

      Petitioner, an inmate at Hancock State Prison, in Sparta, Georgia and represented by counsel, brought the above-captioned petition pursuant to 28 U.S.C. § 2254. Having considered all the relevant pleadings, for the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Petitioner's § 2254 petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

## I.      BACKGROUND

      This case challenges the validity of Petitioner's convictions for a litany of offenses in the Superior Court of Columbia County, Georgia. On August 5, 2009, a Columbia County grand jury indicted Petitioner for two counts of burglary, one count of armed robbery, three counts of aggravated assault, one count of kidnapping, two counts of malice murder, two counts of possession of a firearm during the commission of a

---

[1]Because the proper respondent is Dennis Brown, Warden of Hancock State Prison, the **CLERK** is **DIRECTED** to substitute him for Gregory McLaughlin as Respondent.

crime, and one count of hijacking a motor vehicle. (Doc. no. 14-1, pp. 9-21.) The Supreme Court of Georgia provided the following description of facts underlying the offenses based on the evidence offered against Petitioner at trial:

> [Petitioner], [his codefendant Martin] Holmes, and at least two other young men, all of whom were carrying guns, broke into [Rickey] Gibson's and [Alexis] Yates' house, demanded money, put a handgun into the baby's mouth, hit Ms. Yates in the head with a gun, and forced her to go outside. Ms. Yates escaped with the baby, and the men shot Gibson multiple times, killing him. A shoe print near the house was consistent with the shoes that [Petitioner] was wearing, and Ms. Yates later identified Holmes as one of the intruders.
>
> Gibson's gold watch was stolen during the home invasion and was left behind about two hours later in [Randy] Manning's yard after his house was burglarized by [Petitioner] and Holmes. [Petitioner] defecated in the yard and cleaned himself with a bloody sock which tested positive for his DNA. Shortly afterwards, [Petitioner] and Holmes entered [Greg] Pridgen's car while it was running and he was delivering a newspaper. Pridgen fought with [Petitioner], who punched him several times and stabbed him. Police officers responded quickly and found [Petitioner] and Holmes running down the street. Pridgen identified both of them as the perpetrators of the crimes against him. A search of a vehicle in which two of their co-indictees were riding revealed a bottle of pills belonging to [Petitioner]'s mother and a camera with pictures of [Petitioner] and Holmes.

Butler v. State, 721 S.E.2d 876, 879 (Ga. 2012).

Petitioner and Mr. Holmes were tried jointly. Petitioner was represented by attorney Victor Hawk. (See doc. no. 14-1, p. 1.) The trial court denied Petitioner's motion to sever his case from Mr. Holmes, first made prior to trial and then renewed on the second day of trial. (Id. at 24-27; doc. no. 14-6, pp. 24.)

The jury found Petitioner guilty on all counts on October 2, 2009. (Doc. no. 14-1, pp. 121-22.) The same day, Petitioner was sentenced to life in prison, plus forty five years, calculated as follows: a term of life imprisonment for malice murder; twenty years

for armed robbery, to run consecutive to the single count of malice murder; twenty years on each count of aggravated assault, to run concurrently with the counts for malice murder and armed robbery; twenty years for hijacking a motor vehicle, to run concurrently with the counts of burglary; twenty years for kidnapping, to run consecutive to the single count for armed robbery; and five years for each count of possession of a firearm during the commission of a crime, to run concurrent with each other, but consecutive to all counts. (Id. at 123.)

On October 16, 2009, Mr. Hawk filed Petitioner's motion for new trial, which he amended twice and represented him at the motion hearing on March 4, 2011. (Doc. no. 14-1, p. 132.) Petitioner claimed that a new trial was necessary because the trial court erred in (1) denying his motion to sever the parties, (2) allowing the State to introduce testimony that the shoe print was a possible match to his shoe, (3) allowing Mr. Pridgen and a police officer to testify as to the certainty of Mr. Pridgen's identification, (4) commenting on the evidence regarding the reliability of the expert identification witness, and (5) denying his objection to removal of a juror without requiring the State to show prejudice. (See generally Doc. no. 14-5.) The trial court denied the motion. (Id.)

Mr. Hawk, representing Petitioner on direct appeal to the Supreme Court of Georgia,[2] raised the following enumerations of error:

(1)     The trial court erred in denying his motion to sever the parties;

(2)     The trial court erred in denying his motion to suppress identification;

_____

[2]Because Petitioner was convicted of murder, the Supreme Court of Georgia had exclusive jurisdiction over his appeal. See Ga. Const. art. VI, § 6, ¶ III(8).

> (3) The trial court erred in commenting on the evidence regarding the reliability of the expert identification witness and one-on-one showups in violation of O.C.G.A. § 17-8-57;
>
> (4) The trial court erred in denying his objection to removal of juror number twelve when the State failed to show prejudice, in violation of O.C.G.A. § 15-12-172.

(Doc. no. 14-16, p. 6.) On January 23, 2012, the Supreme Court of Georgia rejected Petitioner's contentions and affirmed his convictions. See Butler, 721 S.E.2d at 879-83.

Petitioner did not file a state habeas corpus petition, and instead timely filed the above-captioned § 2254 petition. (Doc. no. 1.) Petitioner is represented by Paetra Brownlee. (Id.) Petitioner raises the following grounds for relief:

> (1) He was denied his Fifth, Sixth, and Fourteenth Amendment rights to a fair trial because of the following errors that allegedly took place at his jury trial:
>
>> A. The trial court denied his motion to sever his trial from that of Mr. Holmes;
>> B. The trial court erred in admitting Mr. Pridgen's identification of Petitioner;
>> C. The trial judge made inappropriate and unnecessary statements during key parts of Petitioner's defense;
>
> (2) The trial court's removal of juror twelve during trial absent factual support that he could not remain fair and impartial prejudiced Petitioner and violated his Sixth and Fourteenth Amendment rights to a fair trial by an impartial jury; and
>
> (3) His conviction violates the Fourteenth Amendment because there was insufficient evidence to support his conviction.

(See generally doc. no. 1, pp. 16-49.)

## II.    STANDARD OF REVIEW

Under § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim
>
> > (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The United States Supreme Court has characterized § 2254(d) as "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Harrington v. Richter, 131 S. Ct. 770, 787 (2011).  Accordingly, § 2254(d) creates a "difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (quoting Richter, 131 S. Ct. at 786; Woodford v. Visciotti, 537 U.S. 19, 24 (2002)) (internal citation omitted).

In Brown v. Payton, 544 U.S. 133, 141 (2005), the Supreme Court explained the difference between the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) as follows:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially

indistinguishable from a decision of this Court but reaches a different result. A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

Id. (internal citations omitted). Thus, under § 2254(d)(1), it is not enough to demonstrate that a state court's decision is "incorrect or erroneous"; only a showing that the decision was "objectively unreasonable" will entitle a petitioner to relief. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); see also Richter, 131 S. Ct. at 786-87 ("[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."). A showing that the state court's determination was unreasonable is a substantially higher threshold than whether it was correct. Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1325 (11th Cir. 2013) cert. denied, 133 S. Ct. 2742 (2013). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398.

Moreover, under AEDPA's highly deferential standard of review for state court factual determinations, a federal habeas court may only grant relief if a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Wood v. Allen, 558 U.S. 290, 301 (2010) ("The term 'unreasonable' is no doubt difficult to define. It suffices to say, however, that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." (internal citation

and punctuation omitted)).  Additionally, § 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct" and that the habeas petitioner has the burden of rebutting that presumption "by clear and convincing evidence."  See also Reese v. Sec'y, Fla. Dep't of Corr., 675 F.3d 1277, 1287 (11th Cir. 2012) ("In a habeas proceeding, our review of findings of fact by the state court is even more deferential than under a clearly erroneous standard of review.") (internal quotation marks omitted).

## III.   DISCUSSION

### A.    The State of Georgia, Sam Olens, and Brian Owens Are Improper Respondents.

As an initial matter, the Court finds that the State of Georgia, Sam Olens, and Brian Owens are improper Respondents and should be dismissed. Pursuant to 28 U.S.C. § 2242, an application for a writ of habeas corpus shall allege the name of the person having custody over a petition.  Furthermore, Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts states that, for habeas petitioners who are currently in the custody of the state, "the petition must name as respondent the state officer who has custody."

The Advisory Committee Notes to Rule 2 explain that the state officer having custody of the petitioner is the appropriate respondent when a petitioner is seeking relief from a sentence for which he is currently incarcerated.  The Notes further explain that the state Attorney General is an appropriate party respondent only when the petitioner is attacking a sentence which will be carried out in the future or for which the petitioner is not incarcerated, on probation, or on parole.  As another federal court has explained,

7

"[T]he only proper respondent in a collateral attack is the petitioner's custodian. . . . If the petitioner is in prison, the warden is the right respondent. . . . A state's attorney general is a proper party only if the petitioner is not then confined, but expects to be taken into custody." Hogan v. Hanks, 97 F.3d 189, 190 (7th Cir. 1996); see also Overstreet v. Danforth, CV 112-086, 2013 WL 4048248, at *1 (S.D. Ga. Aug. 8, 2013) (Hall, J.)

As Petitioner is challenging the sentence for which he is currently incarcerated, Dennis Brown is the proper Respondent. Therefore, the State of Georgia, Sam Olens, and Brian Owens should be **DISMISSED** as improper Respondents.

> **B.** **Petitioner's Claims Concerning the Trial Judge's Alleged Improper Statements and Removal of a Juror Are Procedurally Defaulted, and Thus Fail to Provide a Basis for Federal Habeas Relief.**

> **1.** **A Federal Habeas Petitioner Defaults a Claim by Failing to Properly Exhaust State Remedies.**

AEDPA preserves the traditional exhaustion requirement, which requires a district court to dismiss unexhausted habeas claims that the petitioner did not raise in state court, but could have raised by any available procedure. 28 U.S.C. § 2254(b)(1)(A) & (c). A state inmate is deemed to have exhausted his state judicial remedies when he has given the state courts, or they have otherwise had, a fair opportunity to address the state inmate's federal claims. Castille v. Peoples, 489 U.S. 346, 351 (1989). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).

"A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts."

Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) (quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)).  The exhaustion requirement applies with equal force to all constitutional claims.  See Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1353-54 (11th Cir. 2012); Footman v. Singletary, 978 F.2d 1207, 1211 (11th Cir. 1992).  Furthermore, a petitioner's failure to exhaust his claims properly ripens into a procedural default once state remedies are no longer available.  McNair v. Campbell, 416 F.3d 1291, 1305 (11th Cir. 2005) ("It is well established that when a petitioner has failed to exhaust his claim by failing to fairly present it to the state courts and the state court remedy is no longer available, the failure also constitutes a procedural bar.").

A federal habeas petitioner can run afoul of procedural default rules in one of two ways, depending on whether the claim is an old one the petitioner already attempted to assert unsuccessfully in state court, or a new one the petitioner never attempted to raise in state court.  First, a federal habeas petitioner cannot revive an old claim that a state court previously denied on procedural grounds.  "As a general rule, a federal habeas court may not review state court decisions on federal claims that rest on state law grounds, including procedural default grounds, that are 'independent and adequate' to support the judgment."  Boyd v. Comm'r, Alabama Dep't of Corr., 697 F.3d 1320, 1335 (11th Cir. 2012).

A state court decision rests upon "independent and adequate" state procedural grounds when it satisfies the following three-part test:

> First, the last state court rendering a judgment in the case must clearly and expressly say that it is relying on state procedural rules to resolve the federal claim without reaching the merits of the claim.  Second, the state court decision must rest solidly on state law grounds, and may not be

> intertwined with an interpretation of federal law. Finally, the state procedural rule must be adequate; *i.e.,* it may not be applied in an arbitrary or unprecedented fashion. The state court's procedural rule cannot be "manifestly unfair" in its treatment of the petitioner's federal constitutional claim to be considered adequate for purposes of the procedural default doctrine.

Id. at 1336 (internal quotations and citations omitted). Additionally, the Supreme Court has made clear that "a state procedural bar may count as an adequate and independent ground for denying a federal habeas petition even if the state court had discretion to reach the merits despite the default." Walker v. Martin, 131 S. Ct. 1120, 1125 (2011).

Second, a federal habeas petitioner runs afoul of procedural default rules when he attempts to bring a new claim in his federal petition that would be procedurally barred if he attempted to raise it in state court. In such instances, the petitioner's failure to bring the claim properly in state court has "matured into a procedural default." Smith v. Jones, 256 F.3d 1135, 1139 (11th Cir. 2001). Thus, where a state procedural bar is apparent, a court "can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief." Snowden v. Singletary, 135 F.3d 732, 736 (11th Cir. 1998); see also Bailey v. Nagle, 172 F.3d 1299, 1305 (11th Cir. 1999) ("federal courts may treat unexhausted claims as procedurally defaulted , even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile"). To determine whether a claim is procedurally barred in this way, the federal court must "ask whether any attempt [the petitioner] now makes to exhaust his claims in [state] courts would be futile under [the state's] procedural default doctrine." McKee v. Burnett, CV 407-065, 2007 WL 4299995, at *4 (S.D. Ga. Dec. 6, 2007) (citing Snowden, 135 F.3d at 737).

Simply put, if a claim has not been "fairly presented in the state courts, it is procedurally defaulted." Jones v. Campbell, 436 F.3d 1285, 1304 (11th Cir. 2006). To that end, absent a showing of either cause to excuse the default and actual prejudice or a fundamental miscarriage of justice, O.C.G.A. § 9-14-48(d) "precludes state habeas review of any issue not preserved for collateral attack in a state court by a 'timely motion or objection or otherwise compl[ying] with Georgia procedural rules at trial and on appeal." McKee, CV 407-065, 2007 WL 4299995, at *4 (finding that a federal due process claim was procedurally defaulted because it was not raised at trial or on appeal, and therefore "a Georgia habeas court would find it barred under O.C.G.A. § 9-14-48(d)"); see also Black v. Hardin, 336 S.E.2d 754, 755 (Ga. 1985) ("The rule now may be stated as follows: a failure to make timely objection to *any* alleged error or deficiency or to pursue the same on appeal ordinarily will preclude review by writ of habeas corpus."); see also Waldrip v. Head, 620 S.E.2d 829, 835 (Ga. 2005) ("Claims not raised on direct appeal are barred by procedural default[.]").

### 2. Petitioner's Claims Concerning the Trial Judge's Alleged Improper Statements and Removal of a Juror Are Procedurally Defaulted.

In subsection c of Ground One, Petitioner claims that the trial court's unnecessary statements during trial undermined highly relevant aspects of his defense and were so lacking in neutrality that they effectively denied him his Fifth, Sixth, and Fourteenth Amendment rights to a fair trial. (Doc. no. 1, pp. 30-36.) In Ground Two, Petitioner claims the trial court's removal of juror twelve during trial, absent factual support that he could not remain fair and impartial, prejudiced Petitioner and violated his Sixth and

Fourteenth Amendment rights to a fair trial by an impartial jury.  (Id. at 36-44.)

Respondent argues that because these grounds raise federal constitutional claims which were not raised at trial or on direct appeal, they are new and procedurally defaulted under O.C.G.A. § 9-14-48(d).  (Doc. no. 13-1, p. 3.)  Petitioner concedes that he did not cite the Fifth, Sixth, and Fourteenth Amendments in his motion for new trial or brief on direct appeal, but contends that the substance of the claims he did raise "clearly go to the violation of Petitioner's right to a fair trial under the Fifth, Sixth, and Fourteenth Amendment," and therefore were fairly presented and exhausted in state court.  (Id. at 7-8.)

The Supreme Court has ruled that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim . . . . "  Baldwin v. Reese, 541 U.S. 27, 32 (2004).  The Supreme Court went on to explain in *dicta* that a litigant who wants to raise a federal claim can indicate the federal law basis for his claim by citing, for example, the federal source of law, the case deciding such a claim on federal grounds, or by labeling the claim "federal."  Id.

The Eleventh Circuit has held on multiple occasions that a petitioner does not properly exhaust when petitioner fails to cite federal law, but must articulate the federal constitutional issues.  Zeigler v. Crosby, 345 F.3d 1300, 1307-08 & n.5 (11th Cir. 2003) ("Cursory and conclusional sentences (unaccompanied by citations to federal law) . . . did not present to the [state] courts the federal claim asserted to us."); see also McNair v. Campbell, 416 F.3d 1291, 1303-04 (11th Cir. 2005) (holding federal claims procedurally

defaulted where the briefs in state proceedings contained a single federal district court opinion and briefly mentioned a violation of federal constitutional rights but did not mention the federal standard for those rights); Hartge v. McDonough, 210 F. App'x 940, 943 (11th Cir. 2006) (*per curiam*) (holding a petitioner did not fairly present a federal claim to the state courts where he made a single reference to "fair trial" and citation to federal case, which merely discusses evidentiary rulings under the Federal Rules of Evidence).

Here, Petitioner failed to raise at trial or on direct appeal the federal constitutional claims now raised in his petition concerning the trial judge's alleged improper statements and removal of a juror. As Petitioner concedes, he "did not specifically cite the Fifth, Sixth, and Fourteenth Amendments in his Motion for New Trial and brief on direct appeal." (Doc. no. 13-1, pp. 7-8.) Indeed, Petitioner only cited, and the Georgia Supreme Court only addressed, these two claims on state law grounds, O.C.G.A. §§17-8-57 and 15-12-172. (See doc. no. 14-16, pp. 16-28; doc. no. 1-5, pp. 8-12.)

Petitioner cites a Second Circuit opinion for the proposition that a federal habeas petitioner fairly presents his claims to the state court where "the substance of the federal habeas corpus claim [was] clearly raised and ruled on in the state court" despite not being specifically labeled as a federal claim. See Jackson v. Edwards, 404 F.3d 612, 619 (2d Cir. 2005). Here, the Court is not bound by Second Circuit case law and concludes that Petitioner has failed to meet the requirement as set forth in the Eleventh Circuit under Ziegler, McNair, and Hartge.

Petitioner also requests that the Court grant him an abatement of this petition in

order to further exhaust his state remedies should the Court find that Petitioner has not exhausted all of his federal claims at the state court level. However, because Petitioner failed to raise these two federal claims at trial or on appeal, a Georgia habeas court would find them barred under O.C.G.A. § 9-14-48(d). Snowden, 135 F.3d at 737; McKee, CV 407-065, 2007 WL 4299995, at *4. Therefore, Petitioner's failure to properly bring these claims in state court has matured into a procedural default. Jones, 436 F.3d at 1304.

### 3. Petitioner Has Not Alleged Cause to Justify Federal Review of His Defaulted Claims and the Miscarriage of Justice Exception Does Not Apply.

"A petitioner may obtain federal review of a procedurally defaulted claim if he can show both cause for the default and actual prejudice resulting from the default." Jones, 436 F.3d at 1304 (citing Wainwright v. Sykes, 433 U.S. 72, 97 (1977)). "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule." Maples v. Thomas, 132 S. Ct. 912, 922 (2012) (internal quotation marks omitted).

"Additionally, in extraordinary cases, a federal court may grant a habeas petition without a showing of cause and prejudice to correct a fundamental miscarriage of justice." Jones, 436 F.3d at 1304 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)). The narrow fundamental miscarriage of justice exception, on the other hand, encompasses the extraordinary instance in which a constitutional violation probably has resulted in the conviction of one actually innocent of the crime. Murray, 477 U.S. at 496. In McQuiggin v. Perkins, the Supreme Court held that this exception survived AEDPA's passage but "applies to a severely confined category: cases in which new evidence shows it is more

likely than not that no reasonable juror would have convicted [the petitioner]." 133 S.Ct. 1924, 1933 (internal quotations omitted) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 329 (1995)).

Petitioner has presented no justification for failing to raise his federal claims in his state proceeding, let alone something external to him that cannot be fairly attributed to him. Accordingly, Petitioner has failed to demonstrate the cause and prejudice necessary to overcome his procedural default of these claims. Likewise Petitioner has not shown that a miscarriage of justice will occur if the Court does not consider these claims. Accordingly, Petitioner's claims concerning the trial judge's alleged improper statements and removal of a juror in the instant § 2254 petition have been defaulted and provide no basis for federal habeas relief.

   **C.    The Georgia Supreme Court's Decision to Reject the Claims Concerning Petitioner's Motion to Sever and Petitioner's Identification by Mr. Pridgen Is Entitled to Deference under AEDPA.**

In subsections a and b of Ground One, Petitioner contends that he was denied his Fifth, Sixth, and Fourteenth Amendment rights to a fair trial because the trial court (1) did not sever his case from Mr. Holmes and (2) admitted Mr. Pridgen's identification of Petitioner. (Doc. no. 1, pp. 16-29.) As explained in detail below, the Georgia Supreme Court rejected both claims, and there is no basis for federal habeas relief on these claims.

   **1.    Petitioner Is Not Entitled to Federal Habeas Corpus Relief in Connection with His Severance Claim.**

Petitioner contends that the trial court's denial of his motion to sever the parties violated his constitutional right to due process and a fair trial because his defense was prejudiced. (Doc. no. 1, pp. 17-23.) On direct appeal, the Georgia Supreme Court found that the trial court had not abused its discretion in denying Petitioner's motion for

severance because Petitioner had not shown clearly that a joint trial prejudiced his defense, resulting in a denial of due process.  <u>Butler</u>, 721 S.E.2d at 880.  The Georgia Supreme Court first noted that the trial court has broad discretion in deciding whether to grant or deny a motion for severance and considered the following factors:  "(1) Will the number of defendants create confusion as to the law and evidence applicable to each? (2) Is there a danger that evidence admissible against one defendant will be considered against the other despite the court's instructions? (3) Are the defenses of the defendants antagonistic to each other or to each other's rights?"  <u>Id.</u> (citing <u>Ward v. State</u>, 706 S.E.2d 430, 434 (Ga. 2011)).  The Georgia Supreme Court found that all three factors weighed against severance.

As to the first factor, the Georgia Supreme Court found that the number of defendants would not create confusion as to the law and evidence applicable to each because there were only two defendants, the law applicable to each was substantially the same, and the evidence at trial showed that the defendants acted together in committing the jointly indicted crimes.  <u>Butler</u>, 721 S.E.2d at 880.

As to the second factor, the Georgia Supreme Court determined there was no danger that evidence admissible against Mr. Holmes would be considered against Petitioner in disregard of the trial court's instructions to the contrary.  <u>Id.</u>  Petitioner argued that the evidence against him was weak in comparison to the evidence against Mr. Holmes, but the Georgia Supreme Court found that this was not sufficient, relying on its longstanding rule that "it is not enough for the defendant to show that he would have a better chance of acquittal at a separate trial or that the evidence against a co-defendant is

stronger." <u>Herbert v. State</u>, 708 S.E.2d 260, 263 (Ga. 2011) (citing <u>Zafiro v. United States</u>, 506 U.S. 534, 540 (1993)). Additionally, Petitioner did not point to any evidence admitted at joint trial that would not have been admitted had he been tried alone. <u>Id.</u> (citing <u>Morgan v. Mitchell</u>, 527 S.E.2d 556, 558-59 (Ga. 2000)). Furthermore, the trial court instructed the jury that it was not authorized to find a person guilty of a crime who was merely associated with other persons involved. <u>Id.</u> (citing <u>Denny v. State</u>, 636 S.E.2d 500, 503 (Ga. 2006)).

Lastly, as to the third factor, the Georgia Supreme Court found Petitioner waived his argument that Mr. Holmes' defense was antagonistic to his by failing to raise it in the trial court. <u>Id.</u> Even if Petitioner had not waived this argument, the court explained that antagonistic defenses do not automatically require a severance of trials unless there is a showing of resulting prejudice, which Petitioner had not shown. <u>Id.</u> (citing <u>Herbert</u>, 708 S.E.2d at 263 ("Mutually antagonistic defenses are not prejudicial *per se*.") (quoting <u>Zafiro</u>, 506 U.S. at 538)). Indeed, neither defendant attempted to point the blame at the other, and Petitioner had not shown that Mr. Holmes could have or would have provided exculpatory evidence in defense of Petitioner if their trials had been severed. <u>Id.</u> Accordingly, the Georgia Supreme Court found that the trial court had not abused its discretion in denying the motion for a separate trial. <u>Id.</u>

In deciding Petitioner's severance claim, the Georgia Supreme Court did not reach a result contrary to a Supreme Court case with materially indistinguishable facts or apply a rule that contradicts the governing law as set forth in Supreme Court precedent. Indeed, the Georgia Supreme Court evaluated the motion to sever under the same

standards espoused in Zafiro, citing previous Georgia Supreme Court cases correctly applying Zafiro. See Butler, 721 S.E.2d at 880.

The Supreme Court has recognized no general right to a separate criminal trial. Zafiro, 506 U.S. at 541. Following Zafiro, courts "have discretion to grant a severance if a defendant carries his burden to show both that (1) a joint trial would actually prejudice the defendant *and* (2) a severance is the proper remedy for the prejudice, rather than jury instructions or another remedy." Puiatti v. McNeil, 626 F.3d 1283, 1309 (11th Cir. 2010) (citing Zafiro, 506 U.S. at 539–41). As to the first Zafiro step, a defendant "must carry the heavy burden of demonstrating the lack of a fair trial due to actual, compelling prejudice." Puiatti, 626 F.3d at 1309. Mutually antagonistic defenses are not prejudicial *per se*. Zafiro, 506 U.S. at 538. Additionally, "it is not enough for the defendant to show that he would have a better chance of acquittal at a separate trial or that the evidence against a co-defendant is stronger." Id. at 540. As to the second step, severance is not automatically required even if prejudice is shown. Id. at 539-40. Even where the risk of prejudice is high, a limiting instruction will normally "suffice to cure any risk of prejudice." Id. at 539. Trial courts must order severance only where there is a serious risk that a joint trial will compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence. Id. at 539. In sum, the decision whether to grant a motion for severance lies with the trial court's sound discretion. Id. at 538-39.

Petitioner argues that he has, in fact, shown he was prejudiced by the joint trial for three reasons. First, Petitioner argues he was tied to each crime only through Mr.

Holmes, as the only evidence presented against Petitioner was (1) a partial shoeprint near Ms. Yates' house similar to Petitioner's shoe, (2) an unreliable identification of him by Mr. Pridgen, and (3) Petitioner's DNA from feces in Mr. Manning's front yard. (Doc. no. 1, pp. 18-21.)

However, the Georgia Supreme Court's statement of the facts showed that there was more than minimal evidence presented against Petitioner. Butler, 721 S.E.2d at 879. Indeed, as discussed infra Section III.C, Petitioner is not entitled to federal habeas relief on his claim that the evidence admitted against him at trial was insufficient to prove beyond a reasonable doubt that he committed the crimes for which he was convicted. Furthermore, Petitioner's argument that his motion should have been granted because the evidence was stronger against Mr. Holmes, without more, is without merit. As the Supreme Court explained in Zafiro and the Georgia Supreme Court explained when rejecting this key claim by Petitioner, "it is not enough for the defendant to show that he would have a better chance of acquittal at a separate trial or that the evidence against a co-defendant is stronger." See Zafiro, 506 U.S. at 540.

Second, Petitioner contends that his defense was antagonistic to that of Mr. Holmes because, after objection by the State and counsel for Mr. Holmes, the trial court did not allow Petitioner to testify that he gave inconsistent statements to investigating officers due to Mr. Holmes prompting him to lie. (Doc. no. 1, pp. 21-22.) This contention does not establish mutually antagonistic defenses, and Petitioner has failed to show that the joint trial prejudiced his defense with evidence showing, for example, that Mr. Holmes would have exculpated Petitioner by testifying in a separate trial.

Third, Petitioner argues there was a "very high possibility that the jury would confuse the legal standards" by using Petitioner's statements against both him and Mr. Holmes, and using Mr. Holmes' failure to take the stand against Petitioner as well as Mr. Holmes. (Id. at 22.) In support of this argument, Petitioner contends that severance was necessary so that his attorney could comment on the fact that Mr. Holmes did not take the stand to refute the allegations against him, in order to properly defend Petitioner. See DeLuna v. United States, 308 F.2d 140 (5th Cir.1962). In De Luna, the court found severance is necessary to protect a codefendant's constitutional right to silence from prejudicial comment from defense counsel *only* when the defenses are based on mutually exclusive theories of guilt. See United States v. Badolato, 701 F.2d 915, 924 (11th Cir. 1983). These speculative arguments of jury confusion fail to meet Defendant's burden of showing actual prejudice, Puiatti, 626 F.3d at 1309, and, as discussed above, Petitioner and Mr. Holmes did not have mutually antagonistic, much less mutually exclusive defenses, Badolato, 701 F.2d at 924.

Furthermore, even if Petitioner had shown prejudice from the alleged minimal evidence offered against him, or the possibility that the jury would somehow confuse the legal standards, or mutually antagonistic defenses, the trial court cured any risk of prejudice with its instruction against convicting Petitioner on alleged "guilt by association" or evidentiary "spill over," and Petitioner has not met his burden to prove that this limiting instruction was insufficient "to cure any risk of prejudice." Zafiro, 506 U.S. at 539. The trial court instructed the jury:

> You as a jury are not authorized to find a person who is merely associated with other persons involved in the commission of a crime guilty of consent

in or concurrence in the commission of the crime, unless the evidence shows beyond a reasonable doubt that such person or persons helped in the actual perpetration of the crime or participated in the criminal endeavor.

(Doc. no. 14-14, pp. 954-55.)

In sum, Petitioner cannot show that the trial court's denial of his motion to sever actually prejudiced him or that severance was the proper remedy for any prejudice. See Zafiro, 506 U.S. at 539–41. Petitioner thus has not shown that the Georgia Supreme Court was objectively unreasonable in its determination that the trial court did not err in denying Petitioner's motion to sever. Furthermore, Petitioner has not presented any evidence—much less clear and convincing evidence—to rebut the presumptive correctness of the Georgia Supreme Court's factual determinations. Accordingly, Petitioner is not entitled to federal habeas corpus relief in connection with his severance claim.

### 2. Petitioner Is Not Entitled to Federal Habeas Relief Regarding the Trial Court's Denial of His Motion to Suppress His Identification by Mr. Pridgen.

Petitioner contends that the trial court's failure to suppress Mr. Pridgen's identification of him during a one-on-one show-up at the police station violated Petitioner's constitutional right to a fair trial. (Doc. no. 1, pp. 23-29.) Evaluating this claim on direct appeal, the Georgia Supreme Court found that under the totality of the circumstances there was not a substantial likelihood of irreparable misidentification because (1) Mr. Pridgen had the opportunity to view his attackers face and focused his attention thereon, (2) Mr. Pridgen's description of Petitioner was fairly accurate, and (3) the length of time between the crime and the confrontation was less than one hour.

Butler, 721 S.E.2d at 881. In addition, the court specified that any inconsistencies in Mr. Pridgen's testimony concerning identification were matters properly left for the jury's determination. Id.

The Georgia Supreme Court did not reach a result contrary to a Supreme Court case with materially indistinguishable facts or apply a rule that contradicts the governing law as set forth in Supreme Court precedent. Indeed, the Georgia Supreme Court's holding is consistent with Stovall v. Denno, 388 U.S. 293 (1967). See Butler, 721 S.E.2d at 881. The Supreme Court held in Stovall that an identification procedure violates due process if it is both "unnecessarily suggestive and conducive to irreparable mistaken identification." 388 U.S. at 302. "[A] claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it . . . ." Id. The factors to be considered in evaluating reliability of an identification include:

> . . . the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention; the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

Petitioner argues that five alleged facts establish the deficiencies in the identification. First, Petitioner argues that investigators with the Columbia County Sheriff's Department are trained to conduct lineups as the recommended method for identification, not show-ups. (Doc. no. 1, p. 24.) Second, the description Mr. Pridgen gave before Petitioner and Mr. Holmes were apprehended did not match their appearance. (Id. at 24.) Mr. Pridgen described the first individual as wearing a white T-shirt, younger

than the other individual, and being less than five feet tall, while the second individual was wearing a black T-Shirt and was much bigger, taller, and older than the other individual. (<u>Id.</u> at 24.) When picked up, Petitioner was not wearing a T-shirt, and both he and Mr. Holmes are the same age and height. (<u>Id.</u> at 25.) Third, the officers told Mr. Pridgen that "they caught them" when bringing him to the police station to identify Petitioner and Mr. Holmes. (<u>Id.</u>) Fourth, Petitioner and Mr. Holmes were brought into the room individually, each in leg shackles and handcuffs. (<u>Id.</u>) Fifth, Mr. Pridgen "did not have a chance to get a good look at the faces of the men who attempted to hijack his car" because Mr. Pridgen's fight with Petitioner over the car "occurred rather quickly." (<u>Id.</u> at 28.) Lastly, despite Petitioner having a "large, distinctive tattoo" on his left forearm, Mr. Pridgen had no recollection of seeing any tattoos on Petitioner's arm when he fought him. (<u>Id.</u> at 28-29.) Petitioner argues that for all these reasons Mr. Pridgen's identification was unreliable and the failure of the trial court to suppress it violated his right to a fair trial. (<u>Id.</u> at 29.)

Show-ups, the practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, are analyzed under the <u>Neil</u> factors. <u>Id.</u> Show-ups "are not unnecessarily suggestive unless the police aggravate the suggestiveness of the confrontation" because "immediate confrontations allow identification before the suspect has altered his appearance and while the witness' memory is fresh, and permit the quick release of innocent persons." <u>Johnson v. Dugger</u>, 817 F.2d 726, 729 (11th Cir. 1987) (finding that witness' out-of-court identification of a petitioner and codefendant in show-up, while petitioner and codefendant were in patrol car, was not unnecessarily

suggestive); see also Blanco v. Dugger, 691 F. Supp. 308, 313 (S.D. Fla. 1988) *aff'd sub nom.* Blanco v. Singletary, 943 F.2d 1477 (11th Cir. 1991) (holding that police did not aggravate suggestiveness of show-up where witness identified petitioner at one-on-one show-up).

Here, the police did not aggravate the suggestiveness of the confrontation. Mr. Pridgen testified that he had to identify the alleged suspects one-by-one at the police station. (Doc. no. 14-7, pp. 260-61.) Mr. Pridgen was unequivocal in his identification of Petitioner and Mr. Holmes, stating that he was "[a] hundred percent" certain that they were his attackers. (Id. at 249.) Petitioner makes much of Mr. Pridgen's testimony that the police told him "they caught them" prior to the show-up. This comment does not, however, aggravate the suggestiveness of the show-up and render it inadmissible at trial. Indeed, the very nature of a one-on-one show-up makes it clear to the witness that the police are presenting a person they believe matches the description they were given, such that the police believe they caught the suspect. For this reason, it is no surprise that the case law is replete with cases finding police do not aggravate the suggestiveness of a show-up by engaging in conduct exhibiting the fact that they have "caught" the person being presented for identification and believe that person to be the suspect matching the witness' description. See Johnson v. Dugger, 817 F.2d at 729; United States v. Walker, 201 F. App'x 737, 741 (11th Cir. 2006) (*per curiam*) (holding that one-on-one identification of individual in front of marked patrol car, with hands cuffed behind his back was not unnecessarily suggestive); United States v. Winfrey, 403 F. App'x 432, 436 (11th Cir. 2010) (finding one-on-one identification not unnecessarily suggestive where

police removed individual from patrol car for witness to identify and witness was "a hundred percent sure" the individual carjacked him); Ward v. Tucker, No. 4:11CV75-MP/CAS, 2012 WL 3000205, *7-8 (N.D. Fla. June 18, 2012) *report and recommendation adopted*, No. 4:11CV75-MP-CAS, 2012 WL 2999945 (N.D. Fla. July 23, 2012) (finding identification reliable despite police telling the witness they had "caught the robber").

However, even if the police statements had aggravated the suggestiveness and made the identification procedure impermissibly suggestive, which they did not, this is not the end of the analysis. Consistent with Stovall, even if the identification procedure is impermissibly suggestive, the identification can still be reliable if the Neil factors are met. Johnson, 817 F.2d at 729. (holding that because Neil factors were met, eyewitnesses' "out-of-court identification was not unreliable even if it had been impermissibly suggestive, and [the] trial was not rendered fundamentally unfair by the trial court's admission of [the eyewitnesses'] testimony"); see also United States v. Walls, 237 F. App'x 599, 601 (11th Cir. 2007) (*per curiam*) (holding that introduction of identification did not violate due process because the Neil reliability factors were met and "even if we conclude that the identification procedure was suggestive, 'we must then consider whether, under the totality of the circumstances, the identification was nonetheless reliable'").

Here, the Neil factors demonstrate that the identification was reliable and did not render the trial fundamentally unfair. Indeed, Mr. Pridgen testified that he had the opportunity to view and focus his attention on his attacker's face, despite the quick altercation. (Doc. no. 14-7, p. 254). Mr. Pridgen's degree of attention was high because

he was fighting hand-to-hand with Petitioner. (Id. at 242-47). His description of Petitioner as being a six-foot-tall, black male, with dreadlocks, and wearing a black shirt was fairly accurate, (id. at 240). See Vining v. Crosby, No. 3:03-CV-894-J-32MMH, 2005 WL 2149260, at *9 (M.D. Fla. Sept. 6, 2005) (finding that identification was reliable, in part, because witness gave a "fairly accurate, if not especially thorough" description to the police). Mr. Pridgen was "[a] hundred percent" certain that Petitioner and Mr. Holmes were his attackers. (Id. at 249.) Lastly, the length of time between the crime and the confrontation was less than one hour. Butler, 721 S.E.2d at 880-81.

Moreover, the danger of misidentification by eyewitnesses in pre-trial identification procedures may be "substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error." Simmons v. United States, 390 U.S. 377, 384 (1968). Here, Mr. Pridgen was cross examined by Mr. Hawk about the show-up and identification process. (Doc. no. 14-7, pp. 250-62.) Mr. Hawk was able to expose any potential errors in the identification procedure to the jury. (Id.) In sum, Petitioner has failed to show that the identification procedure violated due process. See Stovall, 388 U.S. at 302.

Furthermore, Petitioner has not presented any evidence—much less clear and convincing evidence—to rebut the presumptive correctness of the Georgia Supreme Court's factual determinations. Accordingly, Petitioner is not entitled to federal habeas relief in connection with his claim related to the trial court's denial of his motion to suppress the identification.

**D.    Federal Habeas Corpus Relief Is Not Warranted with Respect to the Sufficiency of Evidence Claim Previously Rejected by the Georgia Supreme Court.**

In Ground Three, Petitioner asserts that the evidence admitted against him at trial was insufficient to prove beyond a reasonable doubt that he is guilty of the crimes for which he was convicted.  (Doc. no. 1, pp. 45-49.)  Evaluating this claim on direct appeal, the Georgia Supreme Court summarized the trial evidence as quoted <u>supra</u> § I.  Applying the standard in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), the Georgia Supreme Court viewed the evidence in the light most favorable to the verdict and found that the evidence "was sufficient to authorize a rational trier of fact to find [Petitioner] guilty beyond a reasonable doubt of the crimes for which he was convicted."  <u>Id.</u>

Here, in deciding Petitioner's challenges to the sufficiency of the evidence as to his felony murder and aggravated assault convictions, the Georgia Supreme Court did not reach a result contrary to a Supreme Court case with materially indistinguishable facts. Nor did the Georgia Supreme Court apply a rule that contradicts the governing law as set forth in Supreme Court precedent; to the contrary, the Georgia Supreme Court properly applied <u>Jackson</u> in its analysis of Petitioner's claim.

The Supreme Court held in <u>Jackson</u> that a conviction only comports with the Due Process Clause if the evidence produced at trial is sufficient to convince the factfinder beyond a reasonable doubt of the existence of every element of the offense in question. <u>Jackson</u>, 443 U.S. at 316.  The key inquiry is whether, "viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  <u>Id.</u> at 319.  Along with these basic

principles regarding sufficiency of the evidence, the Court is also guided by AEDPA's mandate that the state court's factual determinations are presumptively correct absent rebuttal by clear and convincing evidence.  28 U.S.C. 2254(e)(1).

The state court did not unreasonably apply <u>Jackson</u>.  A rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt based on the evidence properly admitted at trial, showing (1) the shoe print found at Mr. Gibson and Ms. Yates' house was "consistent with the size, sole pattern, and make of the shoes" Petitioner wore that night, as opined by a forensic imprint expert; (2) Ms. Yates' unequivocal identification of Mr. Holmes as the person who invaded her home; (3) Mr. Gibson's watch was stolen and left at Mr. Manning's house; (4) Petitioner defecated in Mr. Manning's yard and cleaned himself with a bloody sock which tested positive for his DNA; (5) Mr. Pridgen's unequivocal and reliable identification of Petitioner; and (6) the bottle of pills belonging to Petitioner's mother and a camera with pictures of Petitioner and Holmes found in the car of their co-indictees.  <u>See</u> <u>Butler</u>, 721 S.E.2d at 879; doc. no. 1-5, pp. 2-3.

Petitioner makes much of the fact that Ms. Yates did not identify him before or during trial, but identified Mr. Holmes before and after trial.  However, Ms. Yates testified that there were at least seven men at her house that night, four of which were in her house.  (Doc. no. 14-6, p. 79.)  Based on the evidence summarized above, a rational trier of fact could find that Petitioner conducted the crime spree with Mr. Holmes, was present at each crime, and participated in each crime.

Petitioner points to the following to argue that there was insufficient, circumstantial evidence linking him to each criminal episode: (1) the only evidence connecting Petitioner to Mr. Gibson and Ms. Yates' house was the partial shoe print "consistent with the size, sole pattern, and make of the shoes," which the forensic expert could not opine as matching the sole of Petitioner's shoe because of the poor cast of the imprint, (2) there was no physical evidence placing Petitioner at the window of Mr. Manning's house where the break-in took place, instead only the feces in the yard with his DNA, (3) there was no physical evidence linking Petitioner to the hijacking of Mr. Pridgen's car, (4) Mr. Pridgen's identification of Petitioner was unreliable, (5) Mr. Pridgen's descriptions of the hijackers did not comport with a description of Petitioner and Mr. Holmes, (6) Petitioner also has a large, distinctive tattoo on his left forearm, which Mr. Pridgen "likely" would have noticed had Petitioner attempted to hijack Mr. Pridgen's car. (Id. at 20-21, 46-49.) Additionally, Ms. Yates testified that she did not see Petitioner at her residence, but identified Mr. Holmes as a perpetrator both before and at trial. (Id. at 47.) Lastly, Petitioner points to the testimony of Bertina Mayo and Sequioa Mayo, the mother of Petitioner's son and her mother, that Petitioner was at home sleeping at the time of the murder. (Id. at 49.)

All of these purported weaknesses in the prosecution's case are points for closing arguments to the jury at trial and woefully inadequate to establish that the state court unreasonably applied Jackson or that the court's decision was based on an unreasonable determination of the facts in light of the evidence presented. Indeed, Petitioner has not presented any evidence—much less clear and convincing evidence—to rebut the

presumptive correctness of the Georgia Supreme Court's factual determinations. Petitioner has therefore not produced evidence that would rebut the presumption that the Georgia Supreme Court's factual determinations are correct, and has not shown that the state court was objectively unreasonable in its determination that the evidence at trial was clearly sufficient for a jury to conclude beyond a reasonable doubt that he was guilty. Accordingly, Petitioner is not entitled to federal habeas relief in connection with his claim in Ground Five challenging the sufficiency of the evidence.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the petition be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 11th day of June, 2014, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA